IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

LAURA JONES-BRINKLEY                                                                           PLAINTIFF

V.                                       CASE NO. 3:20-CV-00058-JTK

COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                                         DEFENDANT

## ORDER

**I.  Introduction:**

Plaintiff, Laura Jones-Brinkley, applied for disability insurance benefits on July 10, 2016, alleging a disability onset date of October 12, 2012.[1] (Tr. at 10). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Jones-Brinkley's application. (Tr. at 21). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Jones-Brinkley has requested judicial review.

For the reasons stated below, the Court[2] affirms the decision of the Commissioner.

**II.  The Commissioner's Decision:**

The ALJ found that Jones-Brinkley had not engaged in substantial gainful activity since the amended alleged onset date of November 1, 2014. (Tr. at 12). The ALJ found, at Step Two of the sequential five-step analysis, that Jones-Brinkley had the following severe impairments: degenerative disc disease, right shoulder degenerative joint disease, neuropathy, obesity, depression, and anxiety. *Id*.

At Step Three, the ALJ determined that Jones-Brinkley's impairments did not meet or

---

[1] Jones-Brinkley amended her onset date to November 1, 2014. (Tr. at 10).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

equal a listed impairment. (Tr. at 13). Before proceeding to Step Four, the ALJ determined that Holman had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations. (Tr. at 15). She could only occasionally stoop, kneel, crouch, and crawl. *Id*. She could only occasionally overhead work. *Id*. She could perform work where the interpersonal contact is only incidental to the work performed. *Id*. She could perform simple tasks that can be learned in 30 days and require little independent judgment to perform those tasks. *Id*. She could tolerate occasional changes in a routine work setting. *Id*.

The ALJ found that Jones-Brinkley had no past relevant work. (Tr. at 19). Next, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Jones-Brinkley's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 20-21). Therefore, the ALJ found that Jones-Brinkley was not disabled. *Id*.

## III. Discussion:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting

*Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

     B. Jones-Brinkley's Arguments on Appeal

Jones-Brinkley contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the RFC did not fully incorporate her limitations and that the ALJ did not resolve an apparent conflict between the *Dictionary of Occupational Titles* ("DOT") and the VE's testimony. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). Jones-Brinkley argues that the RFC for light work outstripped her abilities.

Jones-Brinkley suffered from back, neck, and shoulder pain. MRI and X-rays showed at most, moderate conditions, and Jones-Brinkley said on numerous occasions that pain medications helped her. (Tr. at 1271-1273, 1387-1395, 1459-1465, 1532-1533, 1555-1559). She required only conservative treatment, like pain management, physical therapy, and medication. At the time of the hearing, she was not attending pain management or physical therapy sessions. (Tr. at 47). She did not require surgery for her conditions. Jones-Brinkley could do things like spend time with others, shop in stores, do light chores, prepare simple meals, and drive a car. (Tr. at 302-306). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.

1995). Also, Jones-Brinkley admitted that she worked at a job during the relevant time-period. (Tr. at 37, 50, 462, 471, 509, 590, 714, 970, 1014). Working generally demonstrates an ability to perform a substantial gainful activity, and it is inconsistent with complaints of disabling pain. *Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994).

The ALJ considered the mild-to-moderate objective imaging, conservative treatment, and positive response to medication when formulating the RFC. (Tr. at 14-19). He considered grossly normal clinical examinations. *Id*. And he discussed the reviewing medical expert opinions, which opinions were consistent with the record and the correlating RFC. (Tr. at 19). The RFC was supported by the record.[3]

Jones-Brinkley also claims that the ALJ did not resolve an inconsistency between the DOT and the VE's testimony. The ALJ limited Jones-Brinkley to occasional overhead work in the RFC and in the hypothetical to the VE. The jobs that the VE identified utilized a minimum of frequent reaching according to the DOT's companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"). SCO, (U.S. Dept. of Labor, 1993) pp. 98, 132, 315, C-3. Certainly, this poses a possible conflict, but the ALJ asked the VE if his testimony was consistent with the DOT. (Tr. at 52-54). The VE pointed out the possible reaching conflict and said that based on his experience and judgment about the job requirements, there was no conflict and Jones-Brinkley could perform those jobs.[4] *Id*. When the

---

[3] While Jones-Brinkley did not seek regular specialized psychiatric care, the ALJ found mental impairments at Step Two and limited her to simple work, which was an appropriate RFC finding given the benign mental health record. (Tr. at 15).

[4] The VE has a master's degree in rehabilitation counseling and has worked as an expert witness in federal court and before the Administration for over 30 years. (Tr. at 374-376). Jones-Brinkley's attorney did not question the VE's qualifications, nor did he ask any follow-up questions about a reaching conflict.

4

ALJ asked a follow-up question, the VE reiterated that the jobs identified would suffice. *Id*.

Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014); see Soc. Sec. Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000)(mandating that the ALJ ask the VE whether there is a conflict, and then obtain explanation for any such conflict). In specific cases like this, dealing with the subtle difference between occasional and frequent overhead work, District Courts in this Circuit have held that a VE may rely on his judgment and experience with the jobs in question to resolve any possible conflict. *See Porter v. Berryhill*, 2018 U.S. Dist. LEXIS 37141 *42 (W.D. Mo. Mar. 7, 2018); *Yeley v. Berryhill*, 2018 U.S. Dist. LEXIS 154465 *26-28 (E.D. Mo. Sept. 11, 2018); *Smith v. SSA*, 2020 U.S. Dist. LEXIS 240226 *7 (E.D. Ark. Dec. 22, 2020). The ALJ recognized a possible conflict and pressed the VE to clarify his testimony; he fulfilled his duty at Step Five.

## IV.    Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC incorporated Jones-Brinkley's limitations and the ALJ did not err at Step Five. The finding that Jones-Brinkley was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

---

(Tr. at 50-57).

IT IS SO ORDERED this 3rd day of February, 2021.

_____
UNITED STATES MAGISTRATE JUDGE